IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN WILLIAMS, JR.,                    3:19-CV-00418-BR

       Plaintiff,                       OPINION AND ORDER

v.

THE FEDERAL BUREAU OF
INVESTIGATION, THREE UNKNOWN
NAMED AGENTS OF THE FEDERAL
BUREAU OF INVESTIGATION, and
THE UNITED STATES,

       Defendants.


**WILLIAM L. GHIORSO**
494 State Street, Suite 300
Salem, Oregon 97301
(503) 362-8966

**WILLIAM D. BRANDT**
494 State Street, Suite 300 B
Salem, Oregon 97301
(503) 485-4168

      Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**KEVIN C. DANIELSON**
Assistant United States Attorney
1000 S.W. Third Avenue
Suite 600
Portland, OR 97204
(503) 727-1000

      Attorneys for Defendant


**BROWN, Senior Judge.**

      This matter comes before the Court on Defendants' Motion (#11) to Dismiss. The record is sufficiently developed such that oral argument would not be helpful to resolve this Motion. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.


<u>BACKGROUND</u>

      The following facts are taken from Plaintiff's First Amended Complaint and the parties' filings related to Defendants' Motion to Dismiss and are taken as true unless otherwise noted.

      On April 11, 2018, Plaintiff Steven Williams, Jr., arrived at Portland International Airport to take a flight to Phoenix, Arizona. Plaintiff was carrying approximately $121,940 in cash in his luggage "for legitimate business purposes." First Am. Compl. at ¶ 4. Agents of the Transportation Security Administration (TSA) observed the cash that Plaintiff was carrying in his luggage when Plaintiff passed through security,

2 - OPINION AND ORDER

but the TSA agents permitted Plaintiff to proceed to his boarding gate. The TSA agents, however, notified the Federal Bureau of Investigation (FBI) about Plaintiff and the cash he was carrying in his luggage.

Plaintiff boarded his flight to Arizona, but shortly thereafter three FBI agents approached Plaintiff and directed him to leave the plane and to return to the terminal. When the FBI agents asked Plaintiff to explain why he was carrying the cash, "Plaintiff informed the agents about the nature of his employment and why he was carrying the money."[1] First Am. Compl. at ¶ 8.

The FBI agents asked Plaintiff to give them his cellular telephone so they could search it, but Plaintiff refused. Plaintiff alleges the FBI agents told him that if he did not provide them with his telephone, they would "handcuff him and 'drag him through the airport,' where they would eventually take his phone and his belongings anyway" and/or "'raid [his] home,' and take his belongings." First Am. Compl. at ¶¶ 10-11. Plaintiff, "[f]earing he had no other choice[,] . . . handed over his phone to the FBI agents." *Id*. at 11.

The FBI agents searched Plaintiff's telephone, including his "text messages and data." First Am. Compl. at ¶ 12. The FBI agents informed Plaintiff that they found text messages on his

---

[1] The record does not reflect the nature of Plaintiff's employment nor the reason that he was carrying such a large amount of cash.

telephone that they believed were related to the sale of cannabis. "Plaintiff explained to the FBI agents that the text messages were not related to any unlawful activity, . . . that the messages were from seven years ago . . . [, and] that there was no relation between the money he was carrying and the seven year old text messages." First Am. Compl. at ¶ 15. Nevertheless, the FBI agents confiscated the $121,940 in cash that Plaintiff was carrying.

Plaintiff alleges the FBI agents told him that it was a crime for Plaintiff "to possess the cash that he was carrying" and that if Plaintiff did not "turn [the cash] over to them, he would be arrested and detained for several days while they raided his home." Id. at 10, 16-17. Plaintiff also alleges the FBI agents told him that "any attempt to contest the forfeiture would result in his immediate arrest, and that the police would 'raid [his] home' and arrest him if he filed any lawsuit or action to recover his property." Id. at ¶ 18.

On June 6, 2018, the United States Department of Justice (USDOJ) sent Plaintiff a Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings. The Notice advised Plaintiff that he could challenge the forfeiture in two ways: (1) file a Petition for Remission or Mitigation with the FBI not later than 30 days after he received the Notice or (2) file a claim within "35 days of the date of this letter."

Def.'s Mot. to Dismiss, Ex. 1 at 1-2.  The Notice advised
Plaintiff:

> **TO CONTEST THE FORFEITURE OF THIS PROPERTY IN
> UNITED STATES DISTRICT COURT YOU MUST FILE A
> CLAIM.**
> *If you do not file a claim, you will waive your
> right to contest the forfeiture of the asset.
> Additionally, if no other claims are filed, you
> may not be able to contest the forfeiture of this
> asset in any other proceeding, criminal or civil.*

*Id.* at 2.  On June 25, 2018, Plaintiff signed for a certified
letter containing the Notice.  The FBI also "posted Plaintiff's
cash" on the website forfeiture.gov from June 25, 2018, through
July 28, 2018.

"[A]t the end of October 2018" Plaintiff contacted the FBI
"to request the return of his money."  The FBI informed Plaintiff
that it would not return the money.

On November 6, 2018, Plaintiff mailed to the FBI an
"administrative claim[] for the recovery of his money and for the
violation of his constitutional rights."  First Am. Compl. at
¶ 24.

On December 11, 2018, the FBI denied Plaintiff's
administrative claim on the ground that the 35 days allowed for
filing an administrative claim challenging the forfeiture had
expired, and, therefore, Plaintiff's claim was untimely.

On March 21, 2019, Plaintiff filed a Complaint in this Court
against the FBI and three unknown FBI agents alleging Defendants
(1) conducted an "unreasonable stop, arrest, search, and seizure

of Plaintiff's person and property" in violation of the Fourth
Amendment to the United States Constitution; (2) violated the
self-incrimination clause of the Fifth Amendment when they
"compell[ed] the production of Plaintiff's property," "seiz[ed]
Plaintiff's property . . .[,] and thereafter subject[ed]
Plaintiff's property to an administrative forfeiture";
(3) "seized Plaintiff's property without prior notice or a
hearing and then commenced a nonjudicial forfeiture of
Plaintiff's property" in violation of Plaintiff's right to
procedural due process under the Fifth Amendment; (4) violated
the Takings Clause of the Fifth Amendment when they "seized
Plaintiff's property for public use by removing the money from
Plaintiff's possession and subject[ed] Plaintiff's property to
forfeiture proceedings"; (5) violated the Excessive Fines Clause
of the Eighth Amendment when they seized and forfeited
Plaintiff's property; (6) committed the federal common-law torts
of conversion and replevin when they seized the cash and
completed forfeiture proceedings; and (7) violated Plaintiff's
right to substantive due process under the Fifth Amendment when
they "depriv[ed] Plaintiff of his property in the manner
described above." Although it is not entirely clear, it appears
Plaintiff brought his claims for violation of his constitutional
rights pursuant to *Bivens v. Six Unknown Federal Narcotics
Agents*, 403 U.S. 388 (1971), and his state-law claims pursuant to

the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1340.  Plaintiff sought monetary damages and a declaration that "Plaintiff's property was not subject to forfeiture under 21 U.S.C. § 881(a)(6)."

On June 3, 2019, Plaintiff filed a First Amended Complaint in which he adds the United States as a Defendant and brings the same claims against all Defendants.  In addition to damages, however, Plaintiff also requests in his First, Second, Third, Fourth, Fifth, Sixth, and Eighth Claims that the Court enter an order "invalidating the forfeiture of plaintiff's property and directing its immediate return" pursuant to the Administrative Procedures Act (APA), 5 U.S.C. § 702.

On June 24, 2019, Defendants filed a Motion to Dismiss in which they seek dismissal of Plaintiff's First Amended Complaint.

## STANDARDS

### I.   Dismissal for Lack of Jurisdiction Pursuant to Rule 12(b)(1)

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994)(citations omitted).  *See also Quantum Prod. Serv., LLC v. Austin*, 448 F. App'x 755, 756 (9th Cir. 2011) (same).

"Sovereign immunity is jurisdictional in nature.  Indeed, the 'terms of [the United States'] consent to be sued in any

court define that court's jurisdiction to entertain the suit.'"
*Id.* (quoting *United States v. Sherwood*, 312 U.S. 584, 586
(1941)). *See also United States v. Mitchell*, 463 U.S. 206, 212
(1983)("It is axiomatic that the United States may not be sued
without its consent and that the existence of consent is a
prerequisite for jurisdiction.").

The test for waiver of sovereign immunity is a "stringent
one." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ.
Expense Bd.*, 527 U.S. 666, 675-78 (1999)(quotation omitted).
Sovereign immunity may not be impliedly or constructively waived,
and courts must "indulge every reasonable presumption against
waiver." *Id.* at 678-82 (waivers of sovereign immunity must be
"unmistakably clear"). Any ambiguity in the waiver of sovereign
immunity must be construed in favor of immunity. *United States
v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992).

## II. Dismissal for Failure to State a Claim Pursuant to Rule 12(b)(6)

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as
> true, to "state a claim to relief that is
> plausible on its face." [*Bell Atlantic v.
> Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955
> [(2007)]. A claim has facial plausibility when
> the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that
> the defendant is liable for the misconduct
> alleged. *Id.* at 556. . . . The plausibility
> standard is not akin to a "probability
> requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.
> *Ibid*. Where a complaint pleads facts that are

"merely consistent with" a defendant's liability,
it "stops short of the line between possibility
and plausibility of 'entitlement to relief.'" *Id.*
at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). *See also Bell*
*Atlantic*, 550 U.S. at 555-56. The court must accept as true the
allegations in the complaint and construe them in favor of the
plaintiff. *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

"In ruling on a 12(b)(6) motion, a court may generally
consider only allegations contained in the pleadings, exhibits
attached to the complaint, and matters properly subject to
judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir.
2012)(citation omitted). A court, however, "may consider a
writing referenced in a complaint but not explicitly incorporated
therein if the complaint relies on the document and its
authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756,
763 (9th Cir. 2007)(citation omitted).


## DISCUSSION

Defendants move to dismiss Plaintiff's First Amended
Complaint. Defendants assert (1) the Court should dismiss
Plaintiff's constitutional claims against the United States and
the FBI because the United States has not waived sovereign
immunity for constitutional violations; (2) the Court should
dismiss Plaintiff's APA claims because the Civil Asset Forfeiture

Reform Act (CAFRA), 21 U.S.C. § 881, provides an adequate and exclusive remedy; (3) the Court should dismiss Plaintiff's *Bivens* claims because Plaintiff had an existing, alternative remedy for challenging the forfeiture of his property; (4) the Court should dismiss Plaintiff's state-law claims against the FBI and the FBI agents because the United States is the only proper defendant under the FTCA; and (5) the Court should dismiss Plaintiff's state-law claims against the United States because the FTCA does not waive sovereign immunity for forfeiture claims.

## I. Plaintiff's Constitutional Claims Against the United States and FBI

As noted, Plaintiff asserts in his First, Second, Third, Fourth, Fifth, and Seventh Claims that all Defendants violated his Fourth and Fifth Amendment rights. Defendants, however, assert Plaintiff cannot bring constitutional claims against the United States and the FBI because the United States and its agencies have not waived sovereign immunity for constitutional violations. Individuals do not have a "cause of action directly under the United States Constitution" for violation of their constitutional rights. *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9ᵗʰ Cir. 1992). *See also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017)("In 1871, Congress passed a statute that was later codified at . . . 42 U.S.C. § 1983. It entitles an injured person to money damages if a state official violates his or her constitutional rights. Congress did not

create an analogous statute for federal officials.  Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government.").  In *Bivens v. Six Unknown Agents* the Supreme Court implied a right of action by an individual against a federal agent for violation of the individual's constitutional rights.  403 U.S. at 397.  *See also Ziglar*, 137 S. Ct. at 1854 ("In 1971, and against this background, this Court decided *Bivens*.  The Court held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal *officers* who violated the prohibition against unreasonable search and seizures.") (emphasis added)).

In *Meyer* the Supreme Court declined to extend the right of action implied in *Bivens* to permit an individual to bring a claim against a federal agency or entity for damages arising from violation of the individual's constitutional rights.  *Meyer,* 510 U.S. at 484-85.  The Court noted it had "implied a cause of action against federal officials in *Bivens* in part *because* a direct action against the Government was not available."  *Id*. at 485 (emphasis in original).  The Court declined to extend *Bivens* on the ground that "[i]f we were to recognize a direct action for damages against federal agencies, we would be creating a potentially enormous financial burden for the Federal Government

. . . . We leave it to Congress to weigh the implications of such a significant expansion of Government liability." *Id*. at 486.

In his Response Plaintiff concedes he cannot bring a *Bivens* claim against the United States or the FBI. The Court, therefore, **GRANTS** Defendants' Motion to Dismiss and dismisses with prejudice Plaintiff's First, Second, Third, Fourth, Fifth, and Seventh Claims as to the United States and the FBI.

## II. Plaintiff's APA Claims

In his First, Second, Third, Fourth, Fifth, Sixth, and Eighth Claims Plaintiff requests the Court to enter an order "invalidating the forfeiture of plaintiff's property and directing its immediate return" pursuant to the APA, 5 U.S.C. § 702. Defendants move to dismiss Plaintiff's APA claims on the ground that CAFRA provides Plaintiff's exclusive remedy to challenge the forfeiture of his property.

### A. CAFRA

In 2000 Congress enacted CAFRA, which authorizes the seizing agency to administratively forfeit assets valued up to $500,000 after the seizing agency has comported with the requirements of due process.

Due process under CAFRA requires the seizing agency to send notice to potential claimants within 60 days of the seizure. 18 U.S.C. § 983(a)(1). "Successful actual notice is not

required; the government need only prove an attempt to provide actual notice." *United States v. Simon*, 609 F. App'x 1002, 1006 (11ᵀᴴ Cir. 2015)(citing *Mesa Valderrama v. United States*, 417 F.3d 1196 (11ᵗʰ Cir. 2005)).  After notification, a party may challenge the forfeiture by filing a claim within 35 days of the mailing of the written notice.  18 U.S.C. § 983(a)(2)(B).  If a party does not file a claim, "administrative forfeiture occurs by default, and title in the seized property vests in the United States."  *Simon*, 609 F. App'x at 1006.

"After the deadline for filing a claim has passed, an interest holder has only one mechanism available for return of his property:  a motion to set aside a forfeiture declaration" under CAFRA.  *Simon*, 609 F. App'x at 1006 (citing 18 U.S.C. § 983(e)(5); *Mesa Valderrama*, 417 F.3d at 1196).

**B.    Challenging the Forfeiture under the APA**

The record reflects the USDOJ sent Plaintiff a Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings on June 6, 2018, which is within 60 days of the seizure of Plaintiff's cash.  As noted, the Notice advised Plaintiff that he could challenge the forfeiture in two ways: (1) file a Petition for Remission or Mitigation with the FBI not later than 30 days after he received the Notice or (2) file a claim within "35 days of the date of this letter."  Plaintiff received actual written notice on June 25, 2018, and was properly

advised of his right to challenge the seizure.  The Court, therefore, concludes the USDOJ satisfied the requirements of 18 U.S.C. § 983.

Plaintiff acknowledges he did not file a claim by July 11, 2018, which is 35 days from June 6, 2018, the date the USDOJ sent Plaintiff the Notice.  Plaintiff, however, seeks to set aside the forfeiture under the APA on the grounds of a number of alleged constitutional and state-law violations by Defendants. Courts that have addressed this issue, however, have concluded a plaintiff may not "seek review of an underlying administrative forfeiture decision via the APA."  *Simon*, 609 F. App'x at 1006. As the court explained in *Simon*:

> The APA waives the government's sovereign immunity against suit and provides jurisdiction over an action if the aggrieved party is seeking "relief other than money damages" and "state[s] a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity." 5 U.S.C. § 702.  However, the APA limits judicial review to "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  Under § 983(e), CAFRA expressly provides for the "*exclusive* remedy for seeking to set aside a declaration of forfeiture."  18 U.S.C. § 983(e) (emphasis added); *see also Mesa Valderrama*, 417 F.3d at 1195-96 (holding § 983(e) is the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute). Thus, the only relief available is under § 983(e). *See id.*  We are unable to find any civil forfeiture cases governed by CAFRA that provide for judicial review under the APA.  The district court did not err in determining that CAFRA applies to prevent review of [the defendant's] motions under the APA.

*Id.* at 1007.  *See also Tamez v. United States*, No. 2:18-CV-83, 2018 WL 4921731, at *10 (S.D. Tex. Oct. 10, 2018)("[T]he only equitable relief available to Plaintiff in seeking to set aside the administrative forfeiture arises under" CAFRA.  "CAFRA . . . expressly provides the 'exclusive remedy for seeking to set aside a declaration of forfeiture.'  18 U.S.C. § 983(e) . . . Because an adequate equitable remedy exists solely under CAFRA, Plaintiff cannot prevail on his Fifth Amendment claim for equitable relief brought against the United States or one of its agencies pursuant to the APA.").

The Court adopts the reasoning of *Simon* and *Tamez*. Accordingly, the Court concludes Plaintiff may not circumvent the "existing process for protecting [an injured party's] interest" created by Congress in CAFRA by seeking to challenge the forfeiture under the APA; *i.e.*, Plaintiff's exclusive means to "invalidat[e] the forfeiture of [his] property" is through CAFRA. *Ziglar*, 137 S. Ct. at 1858.

**C.  Equitable Tolling**

As noted, Plaintiff acknowledges he did not file a claim under CAFRA within 35 days of June 6, 2018, the date that the USDOJ sent Plaintiff the Notice.  In his Response, however, Plaintiff asserts to the extent that CAFRA preempts Plaintiff's claims, "its timing requirements should be equitably tolled." Pl.'s Resp. at 13.

The Ninth Circuit has held § 983(e) of CAFRA is not a jurisdictional provision that forecloses consideration of equitable tolling. *See Okafor v. United States*, 846 F.3d 337, 340 (9th Cir. 2017)("Section 983(e) does not state that it is jurisdictional, nor is there any evidence in CAFRA's legislative history or otherwise on the record that it should be treated as such. Accordingly, we treat § 983(e) as a claim-processing rule. Because there is no clear jurisdictional limitation in CAFRA, the district court correctly determined that it had jurisdiction to hear Okafor's motion for equitable relief."). This Court, therefore, has jurisdiction to evaluate Plaintiff's equitable-tolling argument.

"'Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *Okafor*, 846 F.3d at 340 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Plaintiff alleges an "extraordinary circumstance stood in his way" of timely filing a CAFRA claim because he "feared retaliation by the FBI [if he filed a claim under CAFRA] due to the threats that [the FBI] would 'raid [his] home,' 'destroy his property,' and publicly humiliate him if he sought the return of his money." First Am. Compl. at ¶ 22. Plaintiff, however, does not allege or present any evidence that he was "pursing his

rights diligently" in the 91 days between the seizure and the date on which he was required to file a CAFRA claim. For example, Plaintiff does not allege he contacted an attorney or sought any advice concerning his rights during the period at issue. In addition, the record reflects the seizure occurred on April 11, 2018; Plaintiff received the Notice from the USDOJ on June 25, 2018; and Plaintiff was required to file a claim not later than July 30, 2018. Plaintiff does not allege he had any contact with the FBI agents who conducted the seizure or any contact with the FBI in the 91 days between the seizure and the date any CAFRA claim was due.

On this record the Court concludes Plaintiff has not sufficiently alleged or established that he was pursing his rights diligently nor that "some extraordinary circumstance" prevented him from timely filing a CAFRA claim. The Court, therefore, concludes Plaintiff is not entitled to equitable tolling of the deadline to file a CAFRA claim. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss and dismisses with prejudice Plaintiff's APA claims.

### III. Plaintiff's *Bivens* Claims

Plaintiff asserts in his First, Second, Third, Fourth, Fifth, and Seventh Claims that the individual FBI agents violated his Fourth and Fifth Amendment rights. Defendant FBI Agents move to dismiss Plaintiff's First, Second, Third, Fourth, Fifth, and

Seventh Claims against them on the ground that those claims are not cognizable because in CAFRA Congress has created an alternative process for protecting the interests of individuals injured by forfeitures.

As noted, in *Bivens* the Supreme Court implied a right of action against a federal agent for violation of a plaintiff's constitutional rights. 403 U.S. at 397. *See also Ziglar*, 137 S. Ct. at 1854 ("In 1971 . . . this Court decided *Bivens*. The Court held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures."). The Supreme Court, however, explained in *Zigler* that it was reluctant to expand *Bivens* to imply a remedy for other constitutional violations:

> In the decade that followed [*Bivens*], the Court
> recognized what has come to be called an implied
> cause of action in two cases involving other
> constitutional violations. In *Davis v. Passman*,
> 442 U.S. 228 (1979), an administrative assistant
> sued a Congressman for firing her because she was
> a woman. The Court held that the Fifth Amendment
> Due Process Clause gave her a damages remedy for
> gender discrimination. *Id.*, at 248–249. And in
> *Carlson v. Green*, 446 U.S. 14 (1980), a prisoner's
> estate sued federal jailers for failing to treat
> the prisoner's asthma. The Court held that the
> Eighth Amendment Cruel and Unusual Punishments
> Clause gave him a damages remedy for failure to
> provide adequate medical treatment. *See id.*, at
> 19. These three cases — *Bivens, Davis*, and
> *Carlson* — represent the only instances in which
> the Court has approved of an implied damages
> remedy under the Constitution itself.

*  *  *

Later, the arguments for recognizing implied
causes of action for damages began to lose their
force.  In cases decided after *Bivens*, and after
the statutory implied cause-of-action cases that
*Bivens* itself relied upon, the Court adopted a far
more cautious course before finding implied causes
of action.  In two principal cases under other
statutes, it declined to find an implied cause of
action.  *See Piper v. Chris-Craft Industries,
Inc.*, 430 U.S. 1, 42, 45-46 (1977); *Cort v. Ash*,
422 U.S. 66, 68-69 (1975).  Later, in *Cannon v.
University of Chicago*, 441 U.S. 677 (1979), the
Court did allow an implied cause of action; but it
cautioned that, where Congress "intends private
litigants to have a cause of action," the "far
better course" is for Congress to confer that
remedy in explicit terms.  *Id.*, at 717.

*  *  *

Given the notable change in the Court's approach
to recognizing implied causes of action . . . the
Court has made clear that expanding the *Bivens*
remedy is now a "disfavored" judicial activity.
*Iqbal*, 556 U.S. at 675.  This is in accord with
the Court's observation that it has "consistently
refused to extend *Bivens* to any new context or new
category of defendants."  *Correctional Services
Corp. v. Malesko*, 534 U.S. 61, 68 (2001).  Indeed,
the Court has refused to do so for the past 30
years.

For example, the Court declined to create an
implied damages remedy in the following cases:
. . . a substantive due process suit against
military officers, *United States v. Stanley*, 483
U.S. 669, 671-672, 683-684 (1987); a procedural
due process suit against Social Security
officials, *Schweiker v. Chilicky*, 487 U.S. 412,
414 (1988); a procedural due process suit against
a federal agency for wrongful termination, *FDIC v.
Meyer*, 510 U.S. 471, 473-474 (1994); [and] . . . a
due process suit against officials from the Bureau
of Land Management, *Wilkie v. Robbins*, 551 U.S.
537, 547-548, 562 (2007).

137 S. Ct. at 1854–55, 1857.  The Supreme Court also reiterated
when

> there is an alternative remedial structure present
> in a certain case, that alone may limit the power
> of the Judiciary to infer a new *Bivens* cause of
> action.  For if Congress has created "any
> alternative, existing process for protecting the
> [injured party's] interest" that itself may
> "amoun[t] to a convincing reason for the Judicial
> Branch to refrain from providing a new and
> freestanding remedy in damages."  *Wilkie [v.
> Robbins*, 551 U.S. 537, 550 (2007)]; *see also
> Bush [v. Lucas,* 462 U.S. 367, 385–388 (1983)]
> (recognizing that civil-service regulations
> provided alternative means for relief).

*Ziglar*, 137 S. Ct. at 1858.

Although the Ninth Circuit has not addressed the issue,
other circuit courts have refused to recognize a *Bivens* claim
related to administrative forfeitures of property based on the
Supreme Court's refusal to expand *Bivens* and the Supreme Court's
admonition that courts should refrain from expanding *Bivens* in
light of the fact that Congress has created an "alternative,
existing process for protecting the [injured party's] interest."
For example, in *Rankin v. United States* the plaintiff sought
relief under *Bivens* for "the purportedly unconstitutional
forfeiture of his property."  556 F. App'x 305, 311 (5th Cir.
2014).  The court noted CAFRA "provides a comprehensive statutory
scheme for challenging a civil forfeiture."  *Id*.  The court
ultimately concluded "[b]ecause CAFRA provides a comprehensive
scheme for protecting property interests, no *Bivens* claim is

available." *Id.* (citing *Bush*, 462 U.S. at 385-89). Similarly,

in *Francis v. Milligan* the plaintiff asserted "his car and cash

were seized [and forfeited] in violation of the Fourth

Amendment." 530 F. App'x 138, 138 (3rd Cir. 2015). The

plaintiff brought an action under *Bivens* seeking damages and a

return of his forfeited property. The court concluded the

plaintiff could not challenge his forfeiture under *Bivens* on the

grounds that:

> By its plain language, [CAFRA] provides a remedy
> for the very claim [the plaintiff] sought to bring
> under *Bivens*, and it provides the exclusive remedy
> for such a claim. *See Mesa Valderrama v. United
> States*, 417 F.3d 1189, 1195-96 (11th Cir. 2005).
> Courts should not extend *Bivens* when an
> alternative remedy exists. *See Corr. Servs. Corp.
> v. Malesko*, 534 U.S. 61, 74 (2001).

*Francis,* 530 F. App'x at 139.

District courts in the Ninth Circuit have reached the same

conclusion. *See, e.g., Lefler v. United States*, No. 11CV220-LAB

POR, 2011 WL 2132827, at *2 (S.D. Cal. May 26, 2011)("Even if

[the plaintiff] . . . could show . . . he would have contested

the forfeiture . . . , a *Bivens* action would not lie because [the

plaintiff] has a remedy under § 983(e)."); *United States v. Hall*,

2:06-cr-00310-HDM-PAL, 2010 WL 11531405, at *6 (D. Nev. Mar. 31,

2010)(dismissing the plaintiff's claim brought pursuant to *Bivens*

for the return of currency seized and forfeited on the ground

that "CAFRA is the exclusive remedy" for the plaintiff's claim).

District courts in other circuits have also held individuals may

not challenge forfeitures under *Bivens*.  *See, e.g., Perkins v. Jordan*, No. 1:17-cv-03507-JMS-DLP, 2018 WL 2722875, at *3-4 (S.D. Ind. June 6, 2018)(holding the plaintiff's "suit [challenging the forfeiture of the plaintiff's currency] may not proceed . . . as a *Bivens* claim" because "Congress created a statutory vehicle for such claims in the form of 18 U.S.C. § 983(e)."); *Mikhaylov v. United States*, 29 F. Supp. 3d 260, 271 (E.D.N.Y. 2014)(The plaintiff's "exclusive remedy with respect to the forfeiture of his money is a Section 983(e) motion and not additional *Bivens* claims.").

The Court adopts the reasoning of *Rankin, Francis*, and *Lefler.*  The Court, therefore, declines to extend *Bivens* to Plaintiff's First, Second, Third, Fourth, Fifth, and Seventh Claims on the ground that CAFRA provides the exclusive remedy.

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss and dismisses Plaintiff's First, Second, Third, Fourth, Fifth, and Seventh *Bivens* claims as to the three unknown FBI agents to the extent that Plaintiff seeks to litigate the seizure and forfeiture of his assets.  The Court, however, **DENIES** the Motion to the extent that Plaintiff seeks to litigate whether the agents' seizure of his person or their allegedly coercive questioning of him violated his Fourth and/or Fifth Amendment rights.

## IV. Plaintiff's Tort Claims

Plaintiff's Sixth Claim is for conversion and replevin. Plaintiff seeks damages and the return of the forfeited currency. Plaintiff brings his Sixth Claim pursuant to the APA and the FTCA. The Court has already concluded Plaintiff may not bring his Sixth Claim pursuant to the APA.

### A. Defendants FBI and FBI Agents

Defendants move to dismiss that portion of Plaintiff's Sixth Claim brought against the FBI and the FBI agents pursuant to the FTCA on the ground that the United States is the only proper Defendant under the FTCA.

In his Response Plaintiff concedes the United States is the only proper Defendant under the FTCA.

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss and dismisses with prejudice that portion of Plaintiff's Sixth Claim against the FBI and the FBI agents brought pursuant to the FTCA.

### B. Defendant United States

Defendants move to dismiss that portion of Plaintiff's Sixth Claim against the United States brought pursuant to the FTCA on the ground that the FTCA does not waive sovereign immunity for forfeiture claims when the interests of the claimant have been forfeited.

Under the FTCA the United States waives sovereign

immunity for tort claims that result from injuries caused by negligent or wrongful acts of government employees acting within the scope of their employment. 28 U.S.C. §§ 1346(b)(1), 2671-80. Under the FTCA, however, the United States does not waive sovereign immunity for certain claims, and those exceptions are set out in 28 U.S.C. § 2680. In particular, under § 2860(c) the United States does not waive sovereign immunity for claims "arising in respect of the . . . detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer" unless:

> (1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
>
> (2) the interest of the claimant *was not forfeited*;
>
> (3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); *and*
>
> (4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

Emphasis added. *See Himex Co., Inc. v. United States*, 17 F. Supp. 3d 77, 80 (D.D.C. 2014)("However, § 2680(c) states that the waiver of sovereign immunity provided in § 1346(b) *shall* apply to claims that would ordinarily fall under the detention exception if the plaintiff can establish that: (1) the property was seized

for the purpose of forfeiture; (2) the interest of the claimant was not forfeited; (3) the interest of the claimant was not remitted or mitigated; and (4) the interest of the claimant was not forfeited under a federal criminal forfeiture law. . . . In short, fulfillment of these four statutory conditions will effectively "re-waive" sovereign immunity, and the claim may be brought in the district courts.")(emphasis in original)).

Here Plaintiff's interest in the currency was forfeited when he did not file a timely claim. As a result, Plaintiff has not satisfied all of the statutory conditions set out in § 2680(c), and, therefore, § 2680(c) does not "re-waive" sovereign immunity. Courts that have addressed the issue have concluded when the interest of a claimant has been forfeited, sovereign immunity has not been waived and the court, therefore, lacks subject-matter jurisdiction over the claimant's FTCA claim. For example, in *Himex* the plaintiff's interest in his property was forfeited. As a result, the court concluded the plaintiff's FTCA claim did "not meet the statutory criteria of § 2680(c)(1)-(4) required to 're-waive' sovereign immunity, and therefore [the court] lack[ed] jurisdiction." 17 F. Supp. 3d at 81. Similarly, in *Cobar v. DEA Asset Forfeiture Section* the plaintiff sought the return of seized currency from the Asset Forfeiture Section of the Drug Enforcement Administration. No. 12 Civ. 7415(KPF), 2014 WL 1303110, at *1 (S.D.N.Y. March 31,

2014).  The court concluded to the extent that the plaintiff

brought his action pursuant to the FTCA, the court did not have

jurisdiction to decide the issue:

> "The FTCA waives sovereign immunity, *inter alia*,
> for 'claims against the United States, for money
> damages . . . caused by the negligent or wrongful
> act or omission of any employee of the Government
> while acting within the scope of his office or
> employment.'" *Diaz*, 517 F.3d at 613 (quoting 28
> U.S.C. § 1346). Because of certain limitations
> under the FTCA, in order to establish a claim
> under this statute, a claimant must satisfy, among
> other conditions, that "the interest of the
> claimant was not forfeited." *Id*; 28 U.S.C.
> § 2680(c)(2).  Because Plaintiff's interest has
> been forfeited, he cannot satisfy one of the
> required conditions to proceeding under the FTCA,
> and as a result, this Court would not have
> jurisdiction to hear a FCTA claim brought by
> Plaintiff.

*Id*., at *9 n.7.

The Court adopts the reasoning of *Himex* and *Cobar*.  The

Court, therefore, concludes Plaintiff has not satisfied the

requirements of § 2680(c)(1)-(4) to "re-waive" sovereign immunity

for that portion of his Sixth Claim brought against the United

States pursuant to the FTCA because Plaintiff's interest in the

currency that he carried was forfeited.  This Court, therefore,

lacks jurisdiction to decide that portion of Plaintiff's Sixth

Claim.

Accordingly, the Court **GRANTS** Defendants' Motion to

Dismiss and dismisses with prejudice that portion of Plaintiff's

Sixth Claim brought against the United States pursuant to the FTCA.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion (#11) to Dismiss and **DISMISSES with prejudice:**

(1)   Plaintiff's First, Second, Third, Fourth, Fifth, and Seventh Claims as to the United States and the FBI;

(2)   Plaintiff's APA claims;

(3)   Plaintiff's First, Second, Third, Fourth, Fifth, and Seventh *Bivens* claims as to the three unknown FBI agents to the extent that Plaintiff seeks to litigate the seizure and forfeiture of his assets; and

(4)   Plaintiff's Sixth Claim.

The Court **DENIES** Defendant's Motion to Dismiss Plaintiff's First, Second, Third, Fourth, Fifth, and Seventh *Bivens* claims as to the three unknown FBI agents to the extent that Plaintiff seeks to litigate whether the agents' seizure of his person or their allegedly coercive questioning of him violated his Fourth and/or Fifth Amendment rights.

The Court **DIRECTS** Plaintiff not later than **November 15, 2019,** to either file an Amended Complaint setting out any Fourth and/or Fifth Amendment Claims as to the seizure of his person or to file a status report advising the Court that Plaintiff does

not intend to file an Amended Complaint.

IT IS SO ORDERED.

DATED this 18th day of October, 2019.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge