IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN WILLIAMS, JR.,                    3:19-CV-00418-BR

       Plaintiff,                       OPINION AND ORDER

v.

ROBERT J. O'DONNELL, an
individual and Special Deputy
U.S. Marshal for the Federal
Bureau of Investigation;
TIMOTHY OSORIO, an individual
and Detective for the Port of
Portland Police; and LANCE
HEMSWORTH, an individual and
Sergeant for the Port of
Portland Police,

       Defendants.


**WILLIAM L. GHIORSO**
494 State Street, Suite 300
Salem, Oregon 97301
(503) 362-8966

**WILLIAM D. BRANDT**
494 State Street, Suite 300 B
Salem, Oregon 97301
(503) 485-4168

      Attorneys for Plaintiff


1 - OPINION AND ORDER

**BILLY J. WILLIAMS**
United States Attorney
**KEVIN C. DANIELSON**
Assistant United States Attorney
1000 S.W. Third Avenue
Suite 600
Portland, OR 97204
(503) 727-1000

      Attorneys for Defendant

**BROWN, Senior Judge.**

    This matter comes before the Court on Defendants' Motion
(#42) to Dismiss.  The Court concludes oral argument is not
necessary to resolve this Motion because the record is
sufficiently developed.  For the reasons that follow, the Court
**GRANTS in part** and **DENIES in part** Defendants' Motion.


<u>BACKGROUND</u>

    The following facts are taken from Plaintiff's First Amended
Complaint, Third Amended Complaint, and the parties' filings
related to Defendants' Motion to Dismiss and are taken as true
unless otherwise noted.

    Plaintiff Steven Williams, Jr., is a resident of Vancouver,
Washington, and a small business owner who repairs and sells
cars.  At some point Plaintiff found a car in Arizona "that he
was interested in."  Third Am. Compl. at ¶ 5.

    On April 11, 2018, Plaintiff arrived at Portland
International Airport to take a flight to Phoenix, Arizona.

2 - OPINION AND ORDER

Plaintiff was carrying approximately $121,940 in cash in his luggage "for legitimate business purposes."  Third Am. Compl. at ¶ 5.  When Plaintiff went through the security checkpoint at the airport, a Transportation Security Administration (TSA) agent observed the cash that Plaintiff was carrying in his luggage. The TSA agent permitted Plaintiff to proceed to his boarding gate, but he notified the Portland Regional Organized Crime and Drug Task Force about the cash that Plaintiff was carrying.

Plaintiff boarded his flight to Arizona, but within a short time Defendant Timothy Osorio, a detective with the Port of Portland Police, and Defendant Lance Hemsworth, a sergeant with the Port of Portland Police, approached Plaintiff and directed him to leave the plane.  Plaintiff "walked with the officers back to the terminal where they found [Defendant Robert] O'Donnell[, a Multnomah County Sheriff's Deputy,][1] waiting with a K-9."  Third Am. Compl. at ¶ 7.  The officers directed Plaintiff to sit down, took Plaintiff's bag and cellphone, and questioned Plaintiff "about his money."  Third Am. Compl. at ¶ 8.  Plaintiff "explained the nature of his business and told the officers he intended to buy a car in Arizona, but they said they did not believe him."  Third Am. Compl. at ¶ 8.  Deputy O'Donnell

---

[1] Plaintiff alleges Deputy O'Donnell was "at all relevant times . . . cross-deputized by the U.S. Marshals Service as a Special Deputy U.S. Marshal for the Federal Bureau of Investigation."  Third Am. Compl. at ¶ 2.

suggested Plaintiff "prove his explanation by unlocking his phone and showing [the officers] his correspondence with the seller of the car, but [Plaintiff] refused." *Id.* "One of the officers then threatened that they would 'drag [Plaintiff] through the airport' if he did not comply." Third Am. Compl. at ¶ 9. "The officer falsely claimed that it was a crime for [Plaintiff] to carry that much cash, and that he would arrest [Plaintiff], unlock the phone, and search through everything himself." *Id.* "One of the officers threatened that the FBI [Federal Bureau of Investigation] would 'raid [Plaintiff's] home' if he did not cooperate and stated that unlocking his phone was the only way to avoid it." *Id.* Deputy O'Donnell also told Plaintiff "that he could not leave with his money unless he unlocked his phone." *Id.*

The officers' discussion with Plaintiff about his cellphone continued "for about thirty minutes," during which period Plaintiff "asked if he could leave several times, but the officers just repeated their threats and became more aggressive." Third Am. Compl. at ¶ 10. Ultimately Plaintiff gave the cellphone password to Deputy O'Donnell and "agreed to let the officers see his text messages with the seller of the car . . . because he feared it was the only way to avoid their threatened invasion of his home and privacy." Third Am. Compl. at ¶ 11. "[A]ll three officers started searching through [Plaintiff's]

4 - OPINION AND ORDER

text messages and observed numerous conversations about buying and selling cars." *Id.*

At some point Plaintiff "noticed . . . the officers were looking through more than . . . his recent conversations, so he asked them to stop.  The officers responded by repeating their earlier threats to arrest [Plaintiff] and 'drag [him] through the airport.'"  Third Am. Compl. at ¶ 12.  After the officers searched Plaintiff's cellphone for

> another thirty minutes . . ., an officer . . .
> found messages related to cannabis.  [Plaintiff]
> saw the messages and noticed that they were nearly
> a decade old.  When [Plaintiff] pointed out the
> date [to the officers] and explained that the
> messages could not possibly be related to his
> money, one of the officers said "you're not
> leaving here with that money."

Third Am. Compl. at ¶ 13.  Plaintiff asked whether

> he was under arrest and repeated that he was not
> doing anything unlawful, but the officers said
> they were taking his money because of the text
> messages that they found.  [Plaintiff] protested,
> but the officers repeated their earlier threats to
> arrest [Plaintiff], detain him for several days,
> and send a team of FBI agents to "raid [his] home"
> if he tried to "fight it" or contest the
> forfeiture of his money.

Third Am. Compl. at ¶ 14.  "After detaining, searching, and questioning [Plaintiff] for nearly two hours, the officers took his money and left him in the airport without arresting him." Third Am. Compl. at ¶ 15.

On June 6, 2018, the United States Department of Justice (USDOJ) sent Plaintiff a Notice of Seizure of Property and

5 - OPINION AND ORDER

Initiation of Administrative Forfeiture Proceedings.  The Notice
advised Plaintiff that he could challenge the forfeiture in two
ways:  (1) file a Petition for Remission or Mitigation with the
FBI not later than 30 days after he received the Notice or
(2) file a claim within "35 days of the date of this letter."
Def.'s First Mot. to Dismiss, Ex. 1 at 1-2.  The Notice advised
Plaintiff:

> **TO CONTEST THE FORFEITURE OF THIS PROPERTY IN
> UNITED STATES DISTRICT COURT YOU MUST FILE A
> CLAIM.**
> *If you do not file a claim, you will waive your
> right to contest the forfeiture of the asset.
> Additionally, if no other claims are filed, you
> may not be able to contest the forfeiture of this
> asset in any other proceeding, criminal or civil.*

*Id*. at 2.  On June 25, 2018, Plaintiff signed for a certified
letter containing the Notice.  The FBI also "posted Plaintiff's
cash" on the forfeiture.gov website from June 25, 2018, through
July 28, 2018.

　　"[A]t the end of October 2018" Plaintiff contacted the FBI
"to request the return of his money."  The FBI informed Plaintiff
that it would not return the money.

　　On November 6, 2018, Plaintiff mailed to the FBI an
"administrative claim[] for the recovery of his money and for the
violation of his constitutional rights."  First Am. Compl. at
¶ 24.

　　On December 11, 2018, the FBI denied Plaintiff's
administrative claim on the ground that the 35 days allowed for

filing an administrative claim challenging the forfeiture had
expired, and, therefore, Plaintiff's claim was untimely.

On March 21, 2019, Plaintiff filed a Complaint in this Court
against the FBI and three unknown FBI agents alleging Defendants
(1) conducted an "unreasonable stop, arrest, search, and seizure
of Plaintiff's person and property" in violation of the Fourth
Amendment to the United States Constitution; (2) violated the
Self-Incrimination Clause of the Fifth Amendment when they
"compell[ed] the production of Plaintiff's property," "seiz[ed]
Plaintiff's property . . .[,] and thereafter subject[ed]
Plaintiff's property to an administrative forfeiture";
(3) "seized Plaintiff's property without prior notice or a
hearing and then commenced a nonjudicial forfeiture of
Plaintiff's property" in violation of his right to procedural due
process under the Fifth Amendment; (4) violated the Takings
Clause of the Fifth Amendment when they "seized Plaintiff's
property for public use by removing the money from Plaintiff's
possession and subject[ed] Plaintiff's property to forfeiture
proceedings"; (5) violated the Excessive Fines Clause of the
Eighth Amendment when they seized and forfeited Plaintiff's
property; (6) committed the federal common-law torts of
conversion and replevin when they seized the cash and completed
forfeiture proceedings; and (7) violated Plaintiff's right to
substantive due process under the Fifth Amendment when they

7 - OPINION AND ORDER

"depriv[ed] Plaintiff of his property in the manner described above." Although it was not entirely clear, it appeared Plaintiff brought his claims for violation of his constitutional rights pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and his state-law claims pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1340. Plaintiff sought monetary damages and a declaration that "Plaintiff's property was not subject to forfeiture under 21 U.S.C. § 881(a)(6)."

On June 3, 2019, Plaintiff filed a First Amended Complaint in which he added the United States as a Defendant and brought the same claims asserted in his initial Complaint against all Defendants. In addition to damages, however, Plaintiff also requested in his First, Second, Third, Fourth, Fifth, Sixth, and Eighth Claims that the Court enter an order "invalidating the forfeiture of plaintiff's property and directing its immediate return" pursuant to the Administrative Procedures Act (APA), 5 U.S.C. § 702.

On June 24, 2019, Defendants filed a Motion to Dismiss in which they asserted the Court should (1) dismiss Plaintiff's constitutional claims against the United States and the FBI because the United States had not waived sovereign immunity for constitutional violations; (2) dismiss Plaintiff's APA claims because the Civil Asset Forfeiture Reform Act (CAFRA), 21 U.S.C.

§ 881, provided an adequate and exclusive remedy; (3) dismiss Plaintiff's *Bivens* claims because Plaintiff had an existing, alternative remedy for challenging the forfeiture of his property; (4) dismiss Plaintiff's state-law claims against the FBI and the FBI agents because the United States is the only proper defendant under the FTCA; and (5) dismiss Plaintiff's state-law claims against the United States because the FTCA does not waive sovereign immunity for forfeiture claims.

On October 18, 2019, the Court issued an Opinion and Order in which it granted in part and denied in part Defendants' Motion to Dismiss.  Specifically, the Court (1) granted Defendants' Motion to Dismiss and dismissed with prejudice Plaintiff's First, Second, Third, Fourth, Fifth, and Seventh Claims as to the United States and the FBI on the ground that the Supreme Court has declined to extend the right of action implied in *Bivens* to permit individuals to bring claims against federal agencies for damages arising from violation of the individual's constitutional rights; (2) granted Defendants' Motion to Dismiss and dismissed with prejudice Plaintiff's First, Second, Third, Fourth, Fifth, Sixth, and Eighth Claims pursuant to the APA on the ground that CAFRA provides Plaintiff's exclusive remedy to challenge the forfeiture of his property; (3) granted Defendants' Motion to Dismiss and dismissed with prejudice Plaintiff's First, Second, Third, Fourth, Fifth, and Seventh Claims against the individual

agents to the extent that Plaintiff sought to litigate the
seizure and forfeiture of his cash on the ground that those
claims are not cognizable because in CAFRA Congress has created
an alternative process for protecting the interests of
individuals injured by forfeitures; and (4) granted Defendants'
Motion to Dismiss and dismissed with prejudice Plaintiff's Sixth
Claim for conversion and replevin.  The Court, however, denied
Defendants' Motion to Dismiss Plaintiff's First, Second, Third,
Fourth, Fifth, and Seventh Claims against the individual agents
to the extent that Plaintiff sought to litigate whether the
agents' seizure of his person or their allegedly coercive
questioning of him violated his Fourth and/or Fifth Amendment
rights.  The Court granted Plaintiff leave to file a Second
Amended Complaint to the extent that Plaintiff intended to allege
Fourth and/or Fifth Amendment Claims related to the seizure of
his person or allegedly coercive questioning.

On November 22, 2019, Plaintiff filed a Second Amended
Complaint against "three unknown named agents of the [FBI]"
asserting claims for (1) illegal search and seizure in violation
of the Fourth Amendment, (2) violation of the Self-Incrimination
Clause of the Fifth Amendment, (3) violation of the Due Process
Clause of the Fifth Amendment, and (4) violation of the Excessive
Fines Clause of the Eighth Amendment.

On April 14, 2020, Plaintiff filed a Third Amended Complaint

in which he asserted claims pursuant to *Bivens* against Deputy
O'Donnell, Detective Osorio, and Sergeant Hemsworth[2] for
(1) illegal search and seizure in violation of the Fourth
Amendment, (2) violation of the Self-Incrimination Clause of the
Fifth Amendment, (3) violation of the Due Process Clause of the
Fifth Amendment, and (4) violation of the Excessive Fines Clause
of the Eighth Amendment.  Plaintiff also asserts a claim against
Defendants pursuant to 42 U.S.C. § 1983.

On July 24, 2020, Defendants filed a Motion to Dismiss in
which they seek an order dismissing Plaintiff's Third Amended
Complaint on the ground that Plaintiff fails to state a claim
against Defendants.[3]  The Court took Defendants' Motion under
advisement on September 25, 2020.

## STANDARDS

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as
> true, to "state a claim to relief that is
> plausible on its face." [*Bell Atlantic v.
> Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955
> [(2007)].  A claim has facial plausibility when
> the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that

---

[2] Plaintiff asserts Defendants were acting at all relevant
times as agents of the FBI and under color of federal law.

[3] Although Defendants included in their Motion to Dismiss a
standard for dismissal on the basis of lack of subject-matter
jurisdiction pursuant to Federal Rule of Civil Procedure
12(b)(1), Defendants do not present any arguments for dismissal
on that basis.

> the defendant is liable for the misconduct
> alleged. *Id.* at 556. . . . The plausibility
> standard is not akin to a "probability
> requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.
> *Ibid*. Where a complaint pleads facts that are
> "merely consistent with" a defendant's liability,
> it "stops short of the line between possibility
> and plausibility of 'entitlement to relief.'" *Id.*
> at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). *See also Bell Atlantic*, 550 U.S. at 555-56. The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)(citation omitted). A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citation omitted).


## <u>DISCUSSION</u>

Defendants move to dismiss Plaintiff's Third Amended Complaint on the ground that Plaintiff fails to state a claim against Defendants.

## I.    Plaintiff's Third Claim against Defendants for Violation of the Eighth Amendment

Plaintiff asserts in his Third Claim that all Defendants violated the Excessive Fines Clause of the Eighth Amendment. Specifically, Plaintiff alleges "[b]y seizing [Plaintiff's] property . . . defendants exacted a 'fine' that was paid directly to the government.  The fine that defendants assessed against [Plaintiff] in the amount of $121,940.00 was disproportionate and unconstitutionally excessive, and therefore violated [Plaintiff's] rights under the Excessive Fines Clause of the Eighth Amendment."  Third Am. Compl. at ¶¶ 31-32.

In its October 18, 2019, Opinion and Order the Court dismissed with prejudice Plaintiff's *Bivens* claim brought against the individual officers for violation of the Excessive Fines Clause of the Fifth Amendment to the extent that Plaintiff sought to litigate the seizure and forfeiture of his cash.  In *Bivens* the Supreme Court implied a right of action against federal agents for violation of a plaintiff's constitutional rights. 403 U.S. at 397.  *See also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017)("In 1971 . . . this Court decided *Bivens*.  The Court held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures.").  The Supreme Court, however, explained in *Ziglar* that it was reluctant to expand *Bivens* to imply a remedy for

13 - OPINION AND ORDER

other constitutional violations:

> In the decade that followed [*Bivens*], the Court
> recognized what has come to be called an implied
> cause of action in two cases involving other
> constitutional violations.  In *Davis v. Passman*,
> 442 U.S. 228 (1979), an administrative assistant
> sued a Congressman for firing her because she was
> a woman.  The Court held that the Fifth Amendment
> Due Process Clause gave her a damages remedy for
> gender discrimination.  *Id.*, at 248-249.  And in
> *Carlson v. Green*, 446 U.S. 14 (1980), a prisoner's
> estate sued federal jailers for failing to treat
> the prisoner's asthma.  The Court held that the
> Eighth Amendment Cruel and Unusual Punishments
> Clause gave him a damages remedy for failure to
> provide adequate medical treatment.  *See id.*, at
> 19.  These three cases — *Bivens, Davis*, and
> *Carlson* — represent the only instances in which
> the Court has approved of an implied damages
> remedy under the Constitution itself.
>
> * * *
>
> Later, the arguments for recognizing implied
> causes of action for damages began to lose their
> force.  In cases decided after *Bivens*, and after
> the statutory implied cause-of-action cases that
> *Bivens* itself relied upon, the Court adopted a far
> more cautious course before finding implied causes
> of action.  In two principal cases under other
> statutes, it declined to find an implied cause of
> action.  *See Piper v. Chris-Craft Industries,
> Inc.*, 430 U.S. 1, 42, 45-46 (1977); *Cort v. Ash*,
> 422 U.S. 66, 68-69 (1975).  Later, in *Cannon v.
> University of Chicago*, 441 U.S. 677 (1979), the
> Court did allow an implied cause of action; but it
> cautioned that, where Congress "intends private
> litigants to have a cause of action," the "far
> better course" is for Congress to confer that
> remedy in explicit terms.  *Id.*, at 717.
>
> * * *
>
> Given the notable change in the Court's approach
> to recognizing implied causes of action[,] . . .
> the Court has made clear that expanding the *Bivens*
> remedy is now a "disfavored" judicial activity.

*Iqbal*, 556 U.S. at 675.  This is in accord with the Court's observation that it has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001).  Indeed, the Court has refused to do so for the past 30 years.

For example, the Court declined to create an implied damages remedy in the following cases: . . . a substantive due process suit against military officers, *United States v. Stanley*, 483 U.S. 669, 671–672, 683–684 (1987); a procedural due process suit against Social Security officials, *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988); a procedural due process suit against a federal agency for wrongful termination, *FDIC v. Meyer*, 510 U.S. 471, 473–474 (1994); [and] . . . a due process suit against officials from the Bureau of Land Management, *Wilkie v. Robbins*, 551 U.S. 537, 547–548, 562 (2007).

137 S. Ct. 1843, 1854–55, 1857 (2017).  The Supreme Court also

reiterated when

there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.  For if Congress has created "any alternative, existing process for protecting the [injured party's] interest" that itself may "amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie [v. Robbins*, 551 U.S. 537, 550 (2007)]; *see also Bush* (recognizing that civil-service regulations provided alternative means for relief).

*Ziglar*, 137 S. Ct. at 1858.

Although the Ninth Circuit has not addressed the issue,

other circuit courts have refused to recognize a *Bivens* claim

related to administrative forfeitures of property based on the

Supreme Court's refusal to expand *Bivens* and the Supreme Court's

15 - OPINION AND ORDER

admonition that courts should refrain from expanding *Bivens* in
light of the fact that Congress has created an "alternative,
existing process for protecting the [injured party's] interest."
For example, in *Rankin v. United States* the plaintiff sought
relief under *Bivens* for "the purportedly unconstitutional
forfeiture of his property."  556 F. App'x 305, 311 (5th Cir.
2014).  The court found because CAFRA "provides a comprehensive
statutory scheme for challenging a civil forfeiture . . . [and]
provides a comprehensive scheme for protecting property
interests, no *Bivens* claim is available."  *Id.* (citing *Bush v.
Lucas,* 462 U.S. 367, 385-388 (1983)).  Similarly, in *Francis v.
Milligan* the plaintiff asserted "his car and cash were seized
[and forfeited] in violation of the Fourth Amendment."  530 F.
App'x 138, 138 (3rd Cir. 2015).  The plaintiff brought an action
under *Bivens* seeking damages and a return of his forfeited
property.  The court concluded the plaintiff could not challenge
his forfeiture under *Bivens* on the grounds that

> [b]y its plain language, [CAFRA] provides a
> remedy for the very claim [the plaintiff] sought
> to bring under *Bivens*, and it provides the
> exclusive remedy for such a claim.  *See Mesa
> Valderrama v. United States*, 417 F.3d 1189,
> 1195-96 (11th Cir. 2005).  Courts should not
> extend *Bivens* when an alternative remedy exists.
> *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74
> (2001).

*Francis,* 530 F. App'x at 139.

District courts in the Ninth Circuit have reached the same

conclusion.  *See, e.g., Lefler v. United States*, No. 11CV220-LAB POR, 2011 WL 2132827, at *2 (S.D. Cal. May 26, 2011)("Even if [the plaintiff] . . . could show . . . he would have contested the forfeiture . . . , a *Bivens* action would not lie because [the plaintiff] has a remedy under § 983(e)."); *United States v. Hall*, 2:06-cr-00310-HDM-PAL, 2010 WL 11531405, at *6 (D. Nev. Mar. 31, 2010)(dismissing the plaintiff's claim brought pursuant to *Bivens* for the return of currency seized and forfeited on the ground that "CAFRA is the exclusive remedy" for the plaintiff's claim). District courts in other circuits have also held individuals may not challenge forfeitures under *Bivens*.  *See, e.g., Perkins v. Jordan*, No. 1:17-cv-03507-JMS-DLP, 2018 WL 2722875, at *3-4 (S.D. Ind. June 6, 2018)(holding the plaintiff's "suit [challenging the forfeiture of the plaintiff's currency] may not proceed . . . as a *Bivens* claim" because "Congress created a statutory vehicle for such claims in the form of 18 U.S.C. § 983(e)."); *Mikhaylov v. United States*, 29 F. Supp. 3d 260, 271 (E.D.N.Y. 2014)(The plaintiff's "exclusive remedy with respect to the forfeiture of his money is a Section 983(e) motion and not additional *Bivens* claims.").

The Court adopts the reasoning of *Rankin, Francis*, and *Lefler.*  The Court, therefore, declines to extend *Bivens* to Plaintiff's Third Claim for violation of the Excessive Fines Clause of the Eighth Amendment on the ground that CAFRA provides

the exclusive remedy.   Accordingly, the Court grants Defendants'
Motion to Dismiss and dismisses with prejudice Plaintiff's Third
*Bivens* claim against Defendants.

## II.  Plaintiff's Second Claim against Defendants for Violation of Plaintiff's rights under the Fifth Amendment.

Plaintiff alleges Defendants violated his rights under the
Self-Incrimination Clause of the Fifth Amendment when they
"compelled him to produce his property and consent to their
search and seizure."  Third Am. Compl. at ¶ 26.  Plaintiff also
alleges Defendants violated his rights under the Due Process
Clause of the Fifth Amendment when they "insisted on questioning,
threatening, and coercing [Plaintiff] into complying with their
demands to search through his belongings and phone for nearly two
hours."  Third Am. Compl. at ¶¶ 24, 26.

### A.   Self-Incrimination Clause

As noted, Plaintiff asserts Defendants violated his
rights under the Self-Incrimination Clause of the Fifth Amendment
when they compelled Plaintiff to "respond to their questions by
coercion" and to "produce his property and consent to their
search and seizure."  Third Am. Compl. at ¶ 25-26.

#### 1.   The Law

The Self-Incrimination Clause of the Fifth
Amendment provides "no person . . . shall be compelled in any
criminal case to be a witness against himself."  U.S. Const.

amend. V.  "This privilege extends not only 'to answers that
would in themselves support a conviction . . . but likewise
embraces those which would furnish a link in the chain of
evidence needed to prosecute the claimant.'"  *United States v.
Maffei*, No. 18-CR-00174-YGR-1, 2019 WL 1864712, at *5 (N.D. Cal.
Apr. 25, 2019)(quoting *Hoffman v. United States*, 341 U.S. 479,
486 (1951)).  "To prove a violation of this privilege, an
individual must establish (a) self-incrimination (b) by way of
testimonial communication and (c) compulsion." *Maffei*, 2019 WL
1864712, at *5 (citing *United States v. Hubbell*, 530 U.S. 27,
34-38 (2000), and *Hiibel v. Sixth Jud. Dist. Ct. of Nev.,
Humboldt Cty.*, 542 U.S. 177, 189 (2004)).  "The Fifth Amendment
'protects against any disclosures which the witness reasonably
believes could be used in a criminal prosecution or could lead to
other evidence that might be so used.'"  *Maffei*, 2019 WL 1864712,
at *5 (quoting *Kastigar v. United States*, 406 U.S. 441, 445
(1972)).  *See also Doe v. United States*, 487 U.S. 201, 213 (1988)
(the Fifth Amendment is intended to "spare the accused from
having to reveal, directly or indirectly, his knowledge of the
facts relating him to the offense").  "Providing information that
could lead to other evidence that might be used in a criminal
prosecution similarly qualifies as self-incriminating." *Maffei*,
2019 WL 1864712, at *5 (citing *Fisher v. United States*, 425 U.S.
391, 410 (1976)).

### 2.   Seizure of Plaintiff's Money

To the extent that Plaintiff's claim for violation of the Self-Incrimination Clause is based on Defendants' seizure of Plaintiff's money, the Court already declined in its October 18, 2019, Opinion and Order to extend *Bivens* to Plaintiff's claim for violation of the Self-Incrimination Clause on the ground that CAFRA provides the exclusive remedy.  The Court adheres to its October 18, 2019, decision.  Accordingly, to the extent that Plaintiff's Second Claim for violation of the Self-Incrimination Clause is based on the seizure of his money, the Court grants Defendants' Motion to Dismiss that portion of Plaintiff's Second Claim with prejudice.

### 3.   Defendants' Alleged Coercion of Plaintiff to Provide the Passcode to Plaintiff's Cellphone

Although it is not entirely clear, it appears Plaintiff also bases his claim for violation of the Self-Incrimination Clause on his allegation that Defendants coerced him into providing the passcode for his cellphone.  Neither the Supreme Court nor the Ninth Circuit have addressed whether a defendant's passcode to his cellphone qualifies as "information" or whether "aiding in decryption of an electronic device, through provision of a[n] . . . alphanumeric passcode . . . qualifies as a testimonial communication."  District courts in the Ninth Circuit are split on these issues.  *See Maffei*, 2019 WL 1864712,

at *5.  This Court, however, need not decide whether allegedly coercing an individual to provide the passcode to their cellphone violates the Self-Incrimination Clause because courts have not recognized a cause of action under *Bivens* for violation of the Self-Incrimination Clause, and this Court declines to extend *Bivens* to establish such a cause of action.

Courts that have addressed this issue have declined to extend *Bivens* to permit a cause of action for violation of the Self-Incrimination Clause of the Fifth Amendment.  *See, e.g., Chavez v. Wynar*, 421 F. Supp. 3d 891, 910 (N.D. Cal. 2019) ("Plaintiffs have never cited any authority to support the proposition that the Fifth Amendment's right against self-incrimination . . . may give rise to a *Bivens* claim. . . .  In fact, the United States Supreme Court has repeatedly held that 'expanding the *Bivens* remedy is now considered a disfavored judicial activity.'  *Ziglar*, 137 S. Ct. at 1857."); *Brownlee v. Hunt*, No. 3:20-CV-001, 2020 WL 1897178, at *5 (M.D. Pa. Mar. 12, 2020)(declining to extend *Bivens* to permit a cause of action for violation of the Self-Incrimination clause on the grounds that "expanding *Bivens* is a disfavored judicial activity"; there is an "alternative, existing process capable of protecting the constitutional interests at stake"; and "special factors counsel[ed] hesitation in the absence of affirmative action by Congress.").  In *Lee v. Janosko* the court also declined to extend

21 - OPINION AND ORDER

*Bivens* to the plaintiff's claim that the defendant violated the

Self-Incrimination Clause noting

> several special factors counsel[] hesitation to
> expand *Bivens*. . . . For example, Congress has
> not been silent on the issue of coerced
> confessions. Rather, through 18 U.S.C. § 3501,
> Congress specifically addressed the admissibility
> of confessions in criminal cases and, in doing so,
> did not create a damages remedy for coercive
> interrogation tactics. As explained in *Ziglar*,
> "legislative action suggesting that Congress does
> not want a damages remedy is itself a factor
> counseling hesitation." *Ziglar*, 137 S. Ct. at
> 1865. Moreover, courts have specifically refused
> to extend *Bivens* to coercion-based claims arising
> out of the criminal process, stating: "Expanding
> *Bivens* in this fashion would have a chilling
> effect on law enforcement officers and would flood
> the federal courts with constitutional damage
> claims by the many criminal defendants who leave
> the criminal process convinced that they have been
> prosecuted and convicted unfairly." *Vennes v. An
> Unknown No. of Unidentified Agents*, 26 F.3d 1448,
> 1452 (8th Cir. 1994).").

No. 2:18-CV-01297, 2019 WL 2392661, at *5 (W.D. Pa. June 6,

2019).

The Court adopts the reasoning of *Chavez, Brownlee*, and

*Lee.* The Court, therefore, declines to extend *Bivens* to that

portion of Plaintiff's Second Claim in which Plaintiff asserts a

violation of the Self-Incrimination Clause of the Fifth Amendment

based on Defendants' alleged coercion of Plaintiff to provide the

passcode to his cellphone.

**B.    Due Process Clause**

Plaintiff alleges Defendants violated his rights under

the Due Process Clause of the Fifth Amendment when they

22 - OPINION AND ORDER

"unreasonably and outrageously . . . insisted on questioning, threatening, and coercing [Plaintiff] into complying with their demands to search through his belongings and phone for nearly two hours."  Third Am. Compl. at ¶¶ 24, 26.

As noted, following *Bivens* the Supreme Court recognized "an implied cause of action in two cases involving other constitutional violations.  In *Davis v. Passman*, 442 U.S. 228 (1979). . . the Court held that the Fifth Amendment Due Process Clause gave [an employee] a damages remedy for gender discrimination."  *Ziglar*, 137 S. Ct. at 1854 (citing *Davis*, 442 U.S. at 248–49).  In *Carlson v. Green*, 446 U.S. 14 (1980), the Court held the Eighth Amendment provided an inmate's estate with a "damages remedy for failure to provide adequate medical treatment."  *Ziglar*, 137 S. Ct. at 1854 (citing *Carlson*, 446 U.S. at 19).  "These three cases — *Bivens, Davis*, and *Carlson* — represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."  *Ziglar*, 137 S. Ct. at 1854.  Apart from these cases, however, the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants."  *Malesko*, 534 U.S. at 68.  As noted, the Supreme Court declined to create an implied damages remedy in a substantive due-process action against military officers, a procedural due-process action against Social Security officials, a procedural due-process

23 - OPINION AND ORDER

action against a federal agency for wrongful termination, and a due-process action against officials from the Bureau of Land Management.  Plaintiff's purported due-process claim does not fit into an existing *Bivens* cause of action and multiple Supreme Court decisions have rejected extending *Bivens* to encompass due-process violations.  *See, e.g., Chilicky*, 487 U.S. at 414; *Meyer*, 510 U.S. at 473-74; *Robbins*, 551 U.S. at 547-48, 562.

In addition, to the extent that Plaintiff's due-process claim is based on the theory that Defendants' investigatory stop was unreasonable in duration or that the investigatory stop was converted to an arrest without probable cause, such a claim is properly analyzed under the Fourth Amendment.  *See*, *e.g., Terry v. Ohio*, 392 U.S. 1, 30 (1968)(the Supreme Court held officers may conduct an investigatory stop consistent with the Fourth Amendment [when] "a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot."); *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996)(evaluating when an investigatory stop becomes an arrest under the Fourth Amendment).  When "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842

24 - OPINION AND ORDER

(1998)(internal quotation omitted).  *See also United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)("[I]f a constitutional claim is covered by a specific constitutional provision[,] . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.").  Thus, to the extent that Plaintiff's Fifth Amendment due-process claim actually seeks to address the allegedly improper stop and detention of his person, it must be brought pursuant to the Fourth Amendment.  *See Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020)("In *Bivens*, the Supreme Court held that 'a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages . . . even though no federal statute authorized such a claim.'").

Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's Second Claim for violation of the Due Process Clause of the Fifth Amendment.

In summary, the Court grants Defendants' Motion to Dismiss Plaintiff's Second Claim against Defendants for violation of Plaintiff's rights under the Fifth Amendment and dismisses that claim with prejudice.

## III. Plaintiff's First Claim against Defendants for Violation of his rights under the Fourth Amendment

Plaintiff alleges in his First Claim for violation of his rights under the Fourth Amendment that Defendants

unreasonably stopped, searched, and seized

25 - OPINION AND ORDER

> [Plaintiff's] person and property, and did so
> without a warrant and without probable cause to
> believe that [Plaintiff] committed a crime.
> Defendants repeatedly threatened and coerced
> [Plaintiff] into complying with their
> unconstitutional search and seizure, exceeded the
> scope of any limited consent they may have
> obtained, continued searching long after being
> told to stop, and ultimately seized $121,940.00 of
> [Plaintiff's] money.

Third Am. Compl. at ¶ 19.  Defendants move to dismiss Plaintiff's

First Claim on the grounds that Plaintiff "fail[s] to identify

how each individual officer violated his constitutional rights"

and/or that Defendants are entitled to qualified immunity.

**A.     Plaintiff has pled each Defendant's actions with
        sufficient specificity.**

As noted, Defendants move to dismiss Plaintiff's First

Claim on the ground that Plaintiff does not plead each individual

Defendant's actions with sufficient specificity.

Under Federal Rule of Civil Procedure 8(a)(2) a

pleading must contain a "short and plain statement of the claim

showing that the pleader is entitled to relief."

> As the Court held in *Twombly*, 550 U.S. 544, the
> pleading standard Rule 8 announces does not
> require "detailed factual allegations," but it
> demands more than an unadorned, the-defendant-
> unlawfully-harmed-me accusation.  *Id.*, at 555
> . . . .  To survive a motion to dismiss, a
> complaint must contain sufficient factual matter,
> accepted as true, to "state a claim to relief that
> is plausible on its face."  *Id.*, at 570.  A claim
> has facial plausibility when the plaintiff pleads
> factual content that allows the court to draw the
> reasonable inference that the defendant is liable
> for the misconduct alleged.  *Id.*, at 556.

*Iqbal*, 556 U.S. at 677-78.  The Ninth Circuit, other circuit courts, and district courts within the Ninth Circuit, however, have made clear that a "Plaintiff must allege with at least some degree of particularity overt acts which each named defendant engaged in that support plaintiff's claim." *Jones v. Cmty. Rede v. Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  *See also Marcilis v. Township of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (upholding dismissal of *Bivens* complaint that referred to all defendants "generally and categorically" based on the finding that the plaintiff failed to "allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right."); *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008)("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."); *Andrich v. Arpaio*, No. CV1602111PHXDJHJZB, 2016 WL 11631346, at *8 (D. Ariz. Dec. 13, 2016)("Plaintiff alleges that MCSO Defendants' provision of dental treatment violated his due process rights.  However, . . . Plaintiff fails to link his injuries to the conduct of any particular individual MCSO Defendant.  He relies instead on vague and conclusory allegations against a group of at least seven

individual Defendants, and he makes no attempt to identify the
particular Defendant responsible for each instance of purportedly
violative conduct.  Such vague and conclusory allegations are
insufficient to state a claim.").

Plaintiff alleges the following in his Third Amended
Complaint:  Detective Osorio and Sergeant Hemsworth approached
Plaintiff after he boarded the plane, ordered Plaintiff to exit
the plane, and walked with Plaintiff "back to the terminal where
they found [Deputy] O'Donnell waiting with a K-9."  Third Am.
Compl. at ¶ 7.  "The officers" took Plaintiff's "bag and phone"
and questioned him about the money in the bag.  When Plaintiff
explained the nature of his business, Deputy "O'Donnell proposed
that [Plaintiff] . . . unlock his phone and show[] them his
correspondence with the seller of the car."  Third Am. Compl. at
¶ 8.  "One of the officers" threatened to drag Plaintiff through
the airport if he did not unlock his cellphone, "claimed that it
was a crime for [Plaintiff] to carry that much cash, and that he
would arrest [Plaintiff], unlock the phone, and search through
everything himself."  Third Am. Compl. at ¶ 9.  Deputy O'Donnell
told Plaintiff that "he could not leave with his money unless he
unlocked his phone."  *Id*.  The officers asked Plaintiff several
times to unlock his cellphone over a 30-minute period.  Plaintiff
asked if he could leave, but "the officers just repeated their
threats and became more aggressive."  Third Am. Compl. at ¶ 10.

Ultimately Plaintiff gave the passcode for his cellphone to Deputy O'Donnell, at which point "all three officers started searching through [Plaintiff's] text messages and observed numerous conversations about buying and selling cars."  Third Am. Compl. at ¶ 11.  Plaintiff noticed "the officers were looking through more than just his recent conversations" and asked them to stop.  "The officers repeated their . . . threats to arrest [Plaintiff] and [to] drag him through the airport if he did not wait."  Third Am. Compl. at ¶ 12.  Eventually "an officer claimed that he found messages related to cannabis."  *Id*.  Plaintiff pointed out that the messages were nearly a decade old, and "one of the officers said 'you're not leaving here with that money.'"  Third Am. Compl. at ¶ 13.  Ultimately, "[a]fter detaining, searching, and questioning Williams for nearly two hours, the officers took his money and left him in the airport without arresting him."  Third Am. Compl. at ¶ 15.

        Plaintiff's allegations against the individual Defendants are more specific than the plaintiffs' allegations in cases in which courts have concluded the plaintiffs did not allege sufficient facts to state a claim against individual defendants.  For example, in *Marcilis*, the court upheld the district court's dismissal of the plaintiff's claims against two of nine individual defendants on the ground that "[t]he complaint mentions Doyle and Livingston only in paragraph six, for the

purposes of identifying them as employees of the Drug Enforcement
Administration.  Otherwise, the complaint makes only categorical
references to 'Defendants.'"  *Marcilis,* 693 F.3d at 596-97.

On this record, the Court concludes Plaintiff has
alleged facts with sufficient specificity to state a claim
against Defendants for violation of Plaintiff's Fourth Amendment
rights.

**B.    The Court declines to extend *Bivens* to Plaintiff's
First Claim to the extent that Plaintiff seeks the
return of his funds.**

To the extent that Plaintiff seeks to include a *Bivens*
claim in his First Claim on the ground that Defendants violated
Plaintiff's Fourth Amendment right to be free of unreasonable
seizures when they took his cash, the Court explained in its
October 18, 2019, Opinion and Order that CAFRA provides the
exclusive remedy for such a claim.  As noted, although the Ninth
Circuit has not addressed the issue, other circuit courts have
refused to recognize a *Bivens* claim related to administrative
forfeitures of property based on the Supreme Court's admonition
that courts should refrain from expanding *Bivens* to include such
claims because Congress has created an "alternative, existing
process for protecting the [injured party's] interest."  *Ziglar*,
137 S. Ct. at 1858.

Accordingly, the Court grants Defendants' Motion to
Dismiss Plaintiff's First Claim to the extent that Plaintiff

alleges a *Bivens* claim for seizure of his funds.

**C.    Plaintiff has alleged sufficient facts as to the remainder of his First Claim for violation of his rights under the Fourth Amendment.**

Plaintiff alleges Defendants violated his Fourth Amendment right to be free from unreasonable search and seizure when they allegedly coerced Plaintiff into giving them the passcode to his cellphone and searched Plaintiff's text messages beyond the scope of Plaintiff's consent.

As noted, the Fourth Amendment guarantees individuals the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" by government officials.  U.S. Const. amend. IV.  The Supreme Court has made clear that "officers must generally secure a warrant before conducting" the search of an individual's cellphone. *Riley v. Cal.*, 573 U.S. 373, 386 (2014).  The Court noted in *Riley* that "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." *Id*. at 393.  The Court declined to "import[] the search-incident-to-arrest standard from the vehicle context [to] allow[] a warrantless search of an arrestee's cell phone whenever it is reasonable to believe that the phone contains evidence of the crime of arrest." *Id*. at 398.  The Court noted that standard "relie[s] on circumstances unique to the vehicle context to endorse a search solely for the purpose

of gathering evidence." *Id.*

> In the vehicle context, [the standard] generally
> protects against searches for evidence of past
> crimes.  In the cell phone context, however, it is
> reasonable to expect that incriminating
> information will be found on a phone regardless of
> when the crime occurred.  Similarly, in the
> vehicle context . . . broad searches resulting
> from minor crimes such as traffic violations [are
> not permitted].  That would not necessarily be
> true for cell phones.  It would be a particularly
> inexperienced or unimaginative law enforcement
> officer who could not come up with several reasons
> to suppose evidence of just about any crime could
> be found on a cell phone. . . .  The sources of
> potential pertinent information are virtually
> unlimited, so applying the [vehicle search]
> standard to cell phones would in effect give
> police officers unbridled discretion to rummage at
> will among a person's private effects.

*Id.* at 399 (citations omitted).  The Court concluded in *Riley*

that its "holding, of course, is not that the information on a

cell phone is immune from search; it is instead that a warrant is

generally required before such a search, even when a cell phone

is seized incident to arrest."  *Id.* at 401.

Consent is a recognized exception to the Fourth

Amendment's protection against unreasonable searches and

seizures.  *United States v. Russell*, 664 F.3d 1279, 1281 (9th

Cir. 2012).  "The existence of consent to a search[, however,] is

not lightly to be inferred," and the government always has the

burden of proving effective consent.  *United States v. Reid*, 226

F.3d 1020, 1025 (9th Cir. 2000)(citation omitted).  Whether

consent to a search was voluntary or was the product of duress or

coercion is a question of fact to be determined from the totality of the circumstances. *See, e.g., Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *United States v. Drayton*, 536 U.S. 194, 207 (2002). The Ninth Circuit has identified five factors a court must evaluate to determine whether a consent to search was voluntarily given: "(1) whether the defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was notified that he had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained." *Williams v. Child Protective Servs.*, No. EDCV-071632ABCOP, 2011 WL 13224831, at *10-11 (C.D. Cal. June 9, 2011)(citing *United States v. Wa.*, 490 F.3d 765, 775 (9th Cir. 2007)). "An individual's 'mere submission to a claim of lawful authority' is not a showing of voluntary consent." *Williams*, 2011 WL 13224831, at *11 (quoting *Kaupp v. Texas*, 538 U.S. 626, 631 (2003)). "As a result, a search may not be justified based on consent given only after the official conducting the search asserts possession of a warrant or the possibility of obtaining a warrant if necessary." *Williams*, 2011 WL 13224831, at *11 (citing *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968)).

In addition, a police officer violates an individual's Fourth Amendment right to be free from an unreasonable search when he exceeds the scope of the consent to search. *See United*

33 - OPINION AND ORDER

*States v. Lopez-Cruz*, 730 F.3d 803, 809 (9ᵗʰ Cir. 2013)("'It is a violation of a suspect's Fourth Amendment rights for a consensual search to exceed the scope of the consent given.'" (quoting *United States v. McWeeney*, 454 F.3d 1030, 1034 (9ᵗʰ Cir. 2006)). *See also Walter v. United States*, 447 U.S. 649, 656 (1980)("The scope of the search by consent is limited by the terms of its authorization."); *Lopez-Cruz*, 730 F.3d at 810 ("[A] search pursuant to consent is limited by the extent of the consent given for the search by the individual.")(citing *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)).  Thus, "in a scope of consent case, [the court] review[s] for what 'the typical reasonable person [would] have understood' the parties to have said to each other."  *Lopez-Cruz*, 730 F.3d at 810 (citing *Jimeno*, 500 U.S. at 251).

Taking the allegations of Plaintiff's Third Amended Complaint as true, the Court finds although Plaintiff ultimately gave Deputy O'Donnell the passcode to his cellphone and limited consent to a search for messages that established Plaintiff's profession and purpose in carrying the cash, the key determinations are whether Plaintiff's consent was voluntary and whether Defendants exceeded Plaintiff's consent.  These are questions of fact to be determined from the totality of the circumstances at trial rather than at the pleading stage.  *See Schneckloth*, 412 U.S. at 227.

Accordingly, the Court denies Defendants' Motion to

Dismiss Plaintiff's First Claim as to the search of his cellphone.

## IV.  Qualified Immunity

Defendants assert they are entitled to qualified immunity because Plaintiff has not established Defendants violated his clearly-established constitutional rights under the Fourth Amendment.

"'Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019)(quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)).  The Court "ask[s] two questions when determining whether an officer is entitled to qualified immunity:  '(1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct.'"  *Tan Lam v. City of Los Banos*, No. 18- 17404, 2020 WL 5742071, at *7 (9th Cir. Sept. 25, 2020)(quoting *Estate of Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d 998, 1005 (9th Cir. 2017)).  "'Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.'"  *Kisela*, 138 S. Ct. at 1152 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).  "Although 'this Court's caselaw does not

require a case directly on point for a right to be clearly
established, existing precedent must have placed the statutory or
constitutional question beyond debate.'" *Kisela*, 138 S. Ct. at
1152 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). "In
other words, immunity protects all but the plainly incompetent or
those who knowingly violate the law." *Kisela*, 138 S. Ct. at 1152
(quotation omitted). Nevertheless, "qualified immunity is almost
always inappropriate at the pleading stage." *Jordan v. Hung*,
No. 115CV00900DADBAM, 2018 WL 10741486, at *2 (E.D. Cal. Dec. 4,
2018)(citing *Wiseman v. Cate*, No. 1:14-cv-00831-DAD-SAB (PC),
2018 WL 4636181, at *2 (E.D. Cal. Sept. 26, 2018)). *See also
Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018)("Therefore,
we conclude that the operative complaint alleges facts that allow
us to draw the reasonable inference that the defendant is liable
for the misconduct alleged. The district court therefore erred
in dismissing the familial association claim . . . on the basis
of qualified immunity. However, '[o]ur denial of qualified
immunity at this stage of the proceedings does not mean that
this case must go to trial.' *O'Brien v. Welty*, 818 F.3d 920,
936 (9th Cir. 2016). As we have previously noted, '[o]nce an
evidentiary record has been developed through discovery,
defendants will be free to move for summary judgment based on
qualified immunity.'").

Here, as in *Keates*, the Court has concluded Plaintiff has

36 - OPINION AND ORDER

alleged facts sufficient to state a claim for violation of his Fourth Amendment right to be free from the illegal detention and search and seizure of his cellphone.  Accordingly, the Court declines to conclude at this stage that Defendants are entitled to qualified immunity as to Plaintiff's First Claim for violation of his rights under the Fourth Amendment with the search of his cellphone.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion (#42) to Dismiss and **DISMISSES with prejudice** Plaintiff's Second and Third Claims as well as that portion of Plaintiff's First Claim in which he alleges Defendants' seizure of his cash violated the Fourth Amendment.

The Court **DENIES** Defendant's Motion to Dismiss Plaintiff's First Claim to the extent that Plaintiff alleges Defendants' search of his cellphone lacked sufficient consent and/or exceeded the scope of Plaintiff's consent.  This matter will proceed only as to this portion of Plaintiff's First Claim.

The Court directs the parties to confer and to submit no later than **December 1, 2020,** a jointly proposed case-management plan with suggested dates for completion of discovery, the filing of a pretrial order, and a trial.  The Court will schedule a

Rule 16 conference to occur shortly thereafter.

IT IS SO ORDERED.

DATED this 12th day of November, 2020.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge